IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MR. JAMES M. WILLIAMS,               *

      Plaintiff,                           *

          v                             *         Civil Action No. DKC-18-2004

HOLLY PIERCE, NP,                 *

      Defendant.                     *
                                            ***

## MEMORANDUM OPINION

Defendant Holly Pierce, NP, filed a motion to dismiss or for summary judgment (ECF No. 15) in response to this civil rights complaint filed by Plaintiff James M. Williams, an inmate incarcerated at North Branch Correctional Institution in Cumberland, Maryland. Mr. Williams opposes the motion. ECF No. 17.[1] A hearing in this matter is deemed unnecessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated below, Defendant's motion, construed as one for summary judgment due to the court's reliance on outside materials,[2] will be granted.

## Background

Mr. Williams suffers from diabetic neuropathy which causes burning and numbness in his feet and hands. ECF No. 1 at p. 2. To address the pain caused by his condition, Mr. Williams was prescribed Neurontin which he was taking for approximately three or more years. *Id*. On February 20, 2018, when Mr. Williams placed a sick call slip requesting renewal of his Neurontin prescription, he was informed that the prescription was cancelled by Defendant Holly Pierce, a

---

[1] Although Mr. Williams' opposition is inartfully pled, it is clear from reading the document that his intention is to support his claim against Holly Pierce and not, as counsel seems to suggest, to voluntarily dismiss the complaint against her. *See* ECF No. 18 (consent to dismiss and reply).

[2] *See* Fed. R. of Civ. Proc. 56 and *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007) (consideration of materials outside of original pleadings is appropriate for summary judgment).

Nurse Practitioner employed by the healthcare contractor providing services to inmates confined to the Maryland Division of Correction. *Id*. Mr. Williams claims that in place of his prescription medication, Defendant gave him fish oil pills for his pain. *Id*. When Mr. Williams could no longer take his prescription medication, the pain caused by his diabetic neuropathy returned. *Id*.

Mr. Williams states that Defendant took other steps deliberately to cause him harm and explains that on June 15, 2018, Defendant altered the standing order for the administration of his insulin. *Id*. Mr. Williams was on a sliding scale for the administration of insulin whenever his "numbers are high." *Id*. Defendant changed the order to administration of 10 ml of insulin at 4:00 a.m. and 4:00 p.m. *Id*. Mr. Williams states that he believes Defendant is "now out to hurt me because of these actions I am taking to get taken care of." *Id*.

As relief Mr. Williams asks for an Order requiring the medical care providers at NBCI to treat his diabetic neuropathy, return his prescription for Neurontin, and award compensatory damages of $5,000 for his pain and suffering. ECF No. 1 at p. 3.

Defendant admits that Mr. Williams suffers from type II diabetes,[3] but claims she did not terminate his prescription for Neurontin, nor did she write a prescription for 10 ml of insulin to be administered to him twice daily. ECF No. 15-5 (Affidavit of Holly Pierce, NP). Verified medical records submitted in support of Defendant's motion establish that Mr. Williams was seen by Dr. Mahboob Ashraf on November 16, 2017, in the "chronic care clinic" for the monitoring of his chronic health conditions, including diabetes. ECF No. 15-4 at pp. 2-5. At that time, a prescription for 800 mg of Neurontin administered twice daily was in place. *Id*. at p. 4 (list of medications showing start date of Neurontin as October 16, 2017 and expiration date of February 16, 2018).

---

[3] In addition, Mr. Williams has a history of asthma and hypertension as well as a mental health history of depression. ECF No. 15-4 at p. 2.

On that same date, Dr. Ashraf submitted a "non-formulary request" for Gabapentin, 800 mg twice daily, for treatment of "diabetic neuropathies." *Id*. at p. 6. Gabapentin is the generic name for Neurontin.[4]

According to Defendant's explanation, unnamed staff made an error in Mr. Williams' prescription when the February 2018 medication administration record was prepared and a prior order issued by Nurse Practitioner Self for a Neurontin prescription covering the period of October 25, 2017 through February 21, 2018 was recorded. ECF No. 15-5 at p. 2, ¶3. When Mr. Williams was again seen by Dr. Ashraf on February 15, 2018, his prescription was not renewed but he received Neurontin through the February 21, 2018 expiration date. *Id*., *see also* ECF No. 15-4 at pp. 9-12.

Defendant states that the only time she encountered Mr. Williams was on January 26, 2018, when he reported suffering an injury to his knee. ECF No. 15-5 at p. 2, ¶4; ECF No. 15-4 at pp. 7-8. At that time, Mr. Williams had a current, unexpired prescription for Neurontin. ECF No. 15-4 at p. 8. Defendant had no further encounters with Mr. Williams until March 2, 2018, when she discussed his lab test results with him. ECF No. 15-4 at p. 13.

On March 9, 2018, Mr. Williams was seen by Stacie Mast, RN, for complaints of pain in his feet and hands. ECF No. 15-4 at pp. 16-17. Mr. Williams told Ms. Mast that he needed his Neurontin returned to address the pain he was experiencing as a result of his diabetes. *Id*. at p. 16. Ms. Mast noted that Mr. Williams had been non-compliant with his medications and insulin schedule, resulting in several recent high blood sugar levels. *Id*. Mr. Williams was also not reporting to medical to have his blood sugar checked at 4:00 a.m. *Id*. She discussed the importance

---

[4] *See* https://www.mayoclinic.org/drugs-supplements/gabapentin-oral-route/description/drg-20064011 (last visited June 3, 2019).

3

of having his blood sugar checked and watching his weight. He was not prescribed Neurontin but advised to continue taking the medications he was already prescribed. *Id*. The provider noted for this encounter is Defendant Holly Pierce, NP. *Id*. at p. 17. There is no explanation regarding why Mr. Williams's prescription for Neurontin was allowed to expire in any of the records submitted by Defendant. Rather, Tammy Buser, RN, states in a record dated June 29, 2018, that Mr. Williams was not interested in attempting other solutions for his pain and that she "[e]xplained that Neurontin was not a choice at this time." *Id*. at p. 21.

Defendant denies that she altered Mr. Williams' prescription for insulin. She explains that the alleged dosage prescribed (10 ml, twice per day) is lethal if given once per day and therefore would not have been written by any medical care provider. ECF No. 15-5 at p. 2, ¶6. In addition, she states that no order for insulin for Mr. Williams was entered in June of 2018. *Id*.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d

4

514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). In order to state an Eighth Amendment claim for the denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or ensure it was

5

available. *See Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40; *see also Anderson*, 877 F.3d at 544. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference because 'prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement

6

can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 842). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844; *see also Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) ("[A] prison official's response to a known threat to inmate safety must be reasonable.").

Type II diabetes, along with the deleterious effects it has on the body when it is left unaddressed or poorly treated, clearly qualifies as an objectively serious medical condition. Review of the verified medical records submitted by Defendant confirms that the medical care providers at NBCI acknowledge the serious nature of Mr. Williams' illness. He is seen on a regular basis to monitor his conditions; twice daily blood sugar tests are provided; and medications to treat his multiple conditions are prescribed. It is also clear that Mr. Williams has been diagnosed with diabetic neuropathy and that the medication prescribed to him for treatment of that pain has been terminated for unknown reasons, but it was not terminated by the only named Defendant Holly Pierce, NP.

Mr. Williams admits that his Neurontin prescription was reinstated in his response to Defendant's motion, but argues that this is proof that Defendant had no authority to withdraw his prescription. ECF No. 17, *see also* ECF No. 17-1 at p. 23 (Response to Administrative Remedy dated December 10, 2018). While it remains unclear when Mr. Williams was again provided with Neurontin or why it was interrupted, it is undisputed that Defendant Holly Pierce was not responsible for it, entitling her to summary judgment in her favor on this claim. To the extent that Mr. Williams's prescription was allowed to expire due to an error in paperwork, as asserted by

Defendant and undisputed by Mr. Williams, such an act of negligence or inadvertence does not support an Eighth Amendment claim. To be deliberate, an act or omission must be intentional and done for the very purpose of causing harm. *See Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999) ("the Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences.")

Mr. Williams does not dispute Defendant's assertion that his insulin prescription was never changed as he alleged. Defendant is therefore entitled to summary judgment in her favor on this claim. If Mr. Williams wishes to raise claims regarding a knee injury not included in his initial complaint, he must file a new complaint. A response in opposition to Defendant's motion is not the appropriate vehicle through which to amend a complaint.

A separate Order granting Defendant's motion and entering judgment in her favor follows.

June 5, 2019 /s/
DEBORAH K. CHASANOW
United States District Judge